Eastern District of Kentucky
F I L E D
MAY 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-223-GWU

DANIEL COX,                                                                PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Cox

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Cox

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Cox

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Daniel Cox, was found by an Administrative Law Judge (ALJ) to have an adjustment disorder with mixed anxiety and depressed mood, a "severe" impairment under the Commissioner's regulations. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), in response to a hypothetical question concerning an individual of the plaintiff's age and lack of work experience with no exertional limitations, but who was limited to a seventh grade reading ability, fourth grade mathematics ability, and was limited to work that was task-oriented and involved no more than simple instructions and minimal public contact, the ALJ determined that Mr. Cox retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-21). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

As the plaintiff points out on appeal, the hypothetical mental factors disregard functional limitations described by a psychological examiner, Dr. Dennis Spjut, who performed a consultative evaluation of Mr. Cox in July, 2003. Dr. Spjut noted a patient history of drawing disability benefits in the past, in part apparently due to mental problems which had involved extensive treatment at a Comprehensive Care Center (CCC), but that his benefits had been terminated in 2000 after he was incarcerated for manslaughter. (Tr. 211-13). There were no early records available for review.[1] In addition, Mr. Cox had a learning disability and had been in Special Education, although he had earned a GED in prison. (Tr. 212-13). Mr. Cox stated that he had started hearing voices and seeing things when he was 18 or 19, but currently had no auditory hallucinations since receiving medication for the problem. (Tr. 217). He complained of poor sleep due to nightmares involving the self-defense killing that had sent him to jail, and said that he had few friends and was a loner "not by choice." (Id.). Dr. Spjut noted that the plaintiff was co-operative and oriented, but had a relatively high anxiety level. (Tr. 215). Testing showed a full-scale IQ score of 82. (Tr. 216). Dr. Spjut noted that there were no CCC records available for his

---

[1]The plaintiff's mother had informed Dr. Spjut the mental problems leading to his award of benefits had been diagnosed as bipolar disorder and "poor impulse control." (Tr. 215).

8

review and diagnosed a bipolar disorder "by history-?," post traumatic stress disorder, and nicotine dependence. (Tr. 217). In terms of functional restrictions, Dr. Spjut commented that the plaintiff was experiencing significant psychological turmoil, which would occasionally interfere with his ability to focus his attention and concentration. (Id.). He impressed the psychologist as being distractible if required to work in coordination with or proximity to others, had become socially withdrawn and did not want to interact effectively or confidently with the general public, and would likely be very sensitive to criticism from supervisors. (Id.).

A non-examining state agency psychologist, Dr. Edward Stodola, reviewed the record at this point and concluded that the plaintiff would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 262). He explicitly based his restrictions on the report of Dr. Spjut. (Tr. 263).

Records were then submitted showing that the plaintiff sought treatment at CCC beginning on August 25, 2003, and was given a diagnosis of adjustment disorder with mixed anxiety and depressed mood. (Tr. 229). Records from this agency do not appear to be complete, but indicate that Dr. Haroon Siddique

9

prescribed the medications Lexapro and Risperdal in October (Tr. 245), and the plaintiff reported that his anxiety and paranoid thoughts had decreased, but did not return for further treatment until January, 2004. (Tr. 229). At that time, he was reporting severe anxiety, suicidal thoughts, and an increase in auditory hallucinations. (Id.). Apparently, his counselor continued to diagnose an adjustment disorder with mixed anxiety and depressed mood with a Global Assessment of Functioning (GAF) of 65 (Tr. 229), and there is an indication that Dr. Siddique signed a "treatment/service plan" on January 13, 2003, giving the same diagnosis and GAF score. (Tr. 231). However, the next office note from Dr. Siddique himself was dated January 30, 2004, and specifically indicated he had not seen the plaintiff since October 2, 2003. (Tr. 244). Dr. Siddique then diagnosed an adjustment disorder <u>and</u> a major depressive disorder with psychotic symptoms, and prescribed the medications Zoloft and Zyprexa. (Tr. 244). Subsequent office notes from the psychiatrist in March and possibly May of 2004 indicate that the plaintiff was doing better on these medications until they ran out, at which time he was describing more auditory hallucinations, and had also gotten into a fight. (Tr. 241-3). No GAF score or indication of restrictions is given.

Another non-examining state agency psychologist, Dr. Lea Perritt, reviewed the record on February 3, 2004, apparently after reviewing some of the new CCC records, but noted that Mr. Cox's diagnosis continued to be adjustment disorder, and

10

Cox

that the therapist had reported that his progress was limited by several missed appointments. (Tr. 283). Nothing was said about the diagnosis of major depressive disorder with psychotic symptoms. Dr. Perritt found the same restrictions as Dr. Stodola. (Tr. 265-7).

Further treatment notes from Dr. Siddique from June and July of 2004 indicate that the plaintiff's mood had been stable and that the medication had been helping him. (Tr. 291-2). No functional restrictions are suggested.[2]

Finally, the plaintiff was evaluated by Psychologist Robert Spangler in October, 2004 at the request of the plaintiff's attorney. Dr. Spangler diagnosed, among other items, "severe" major depressive disorder with intermittent suicidal ideation and auditory hallucinations and a moderate anxiety disorder, with a GAF of 45-50. (Tr. 296-300). He completed a functional capacity assessment which indicated that the plaintiff had "poor or no" ability to deal with the public, deal with work stresses, and demonstrate reliability, and a "seriously limited but not precluded" ability in several other areas. (Tr. 303-5). This functional capacity assessment is the only one completed by an examining source.

The ALJ rejected Dr. Spangler's opinion, stating that it was inconsistent with the other evidence, including Dr. Siddique's treatment notes and a GAF of 65 given

---

[2]Attached to these records was an office note of unclear date which includes a GAF score of 65, but it appears to be an initial evaluation since it contains the prescriptions for Lexapro and Risperdal which were given in October, 2003. (Tr. 293).

11

by CCC, and also stated that Dr. Spjut's report was more persuasive. (Tr. 19). Since Dr. Spangler and Dr. Spjut were both one-time examiners, the ALJ need not necessarily have given Dr. Spangler controlling weight. However, the ALJ omitted references to any of the functional limitations discussed by Dr. Spjut, apart from distractibility when working with the general public. (Tr. 18). As mentioned previously, Dr. Spjut had noted significant psychological turmoil which would cause some interference with the plaintiff's ability to focus his attention and concentration. (Tr. 218). In addition, he discussed sensitivity to criticism from supervisors. (Id.). Both of the state agency reviewers, Doctors Stodola and Perritt, agreed that the plaintiff would have restrictions in these areas, as well as in certain other categories of sustained concentration and persistence, social interaction, and adaptation. (Tr. 261-2, 265-7). However, the ALJ mentioned only the more general elaborations on mental functional capacity found by Stodola and Perritt in the hypothetical question. Since all of the examining and non-examining sources indicated greater restrictions, a remand will be required for, at a minimum, additional vocational testimony reflecting these more significant limitations.[3]

---

[3] The parties dispute the effect of GAF score of 65 assigned at CCC. The plaintiff asserts that this was an initial score based on the diagnosis of adjustment disorder and that there was no GAF assessment after Dr. Siddique made the diagnosis of major depressive disorder with psychotic symptoms. The Commissioner argues that the score was also given on two occasions in January, 2004. As previously discussed, one of the January 2004 scores was given by an "outpatient therapist," an unacceptable source under 20 C.F.R. Section 416.913, and the other, while apparently signed by Dr. Siddique

Cox

Counsel for the plaintiff also requests a remand to obtain the file from Mr. Cox's prior SSI award, alleging that the agency made only one routine attempt to obtain it (Tr. 73, 264). Counsel suggests that a prior final decision by the defendant might contain findings that are binding on the Commissioner absent a showing of changed circumstances. The Commissioner argues that the doctrine of res judicata would not apply to an initial or reconsideration level determination, but concedes that Drummond v. Commissioner of Social Security, 126 F.3d 837, 841-3 (6th Cir. 1997) contains language that "an initial determination is binding unless the claimant requests reconsideration or the Commissioner revises its decision." Id. at 841, citing 20 C.F.R. Section 404.905. Accord Tobrak v. Apfel, 195 F.3d 183, 188 (3d Cir. 1999).[4] In a "Disability Report" from May, 2003, it is indicated that the last decision in Mr. Cox's case had been at the reconsideration level on May 29, 1996, when his claim was allowed, and that benefits had been terminated in July, 2000. (Tr. 73). The ALJ's decision states that the plaintiff had made an application for benefits on

---

on January 13, 2004, clearly contains no reference to the new diagnosis. While the subsequent office notes from Dr. Siddique indicate that the plaintiff generally responded well to his new medications, counsel for the plaintiff is correct that there is no GAF score reflecting the plaintiff's condition at this phase of his treatment.

[4]Unpublished Sixth Circuit cases question the logic of applying res judicata in the absence of a trial-type administrative hearing and findings of fact, but ultimately these cases were decided on other grounds. Asbury v. Commissioner of Social Security, 83 Fed.Appx. 682, 684 n. 1 (6th Cir. 2003); Rogers v. Commissioner of Social Security, 2000 WL 799332 at *5 (6th Cir. 2000). As unpublished cases, they would not provide a basis for disregarding the language in Drummond, in any case.

13

Cox

December 31, 1986 and these had been approved, but that benefits had been terminated on June 1, 2001 due to incarceration. (Tr. 13). Since the record is unclear as to the dates of the prior application and termination, and is silent on the basis for the award of benefits, the plaintiff may well be correct that information from this application could be relevant to his case. At any rate, the defendant can take this opportunity during the further administrative consideration to attempt to locate these records.

The decision will be remanded for further consideration of the factors outlined in this decision.[5]

This the ___31___ day of May, 2006.

*signature*
G. WIXUNTHANK
SENIOR JUDGE

---

[5]The plaintiff argues that the ALJ erred in finding that he did not have a "severe" physical impairment, but the only examining physician to discuss the issue, Dr. Tony Mancuso, stated that there was no evidence for significant restrictions from the plaintiff's chronic right knee pain, hypertension or complaints of chest pain. (Tr. 226-7). Accordingly, this argument is without merit.

14